## THE CENTRAL PARK CASE.

*Supreme Court, First District; At Chambers, January,* 1861.

MUNICIPAL CORPORATION.—PROCEEDINGS TO OPEN STREETS AND PUBLIC PLACES.—DISCONTINUANCE.—TAXATION OF COSTS.

Under the statutes regulating the opening of streets and public places in the city of New York, the Corporation of the city have power to discontinue such proceedings before confirmation of the report, and without application to the court.
By the act of 1859, relative to the Central Park in that city, the same power is given to the board of commissioners of the Central Park in relation to such proceedings taken by them.
The county clerk has no authority to tax costs in street cases.*
In adjusting costs in such proceedings, the bill must set forth the items and particular services charged.

I. Motion for confirmation of report of commissioners of appraisal in proceedings taken by the commissioners of the Central Park, in the city of New York, to acquire lands for the extension of the park.

The facts are stated in the opinion.

---

* To the same effect see Matter of Fourth Avenue (11 *Ante*, 189).

*Clarence A. Seward* and *E. P. Cowles*, for the Central Park commission.

*John E. Burrill*, for the comptroller.

*Miller & Devlin*, *A. R. Lawrence, jr.*, *James T. Brady*, *J. L. Jernegan*, and *P. G. Clark*, for other parties in interest.

BARNARD, J.—The corporation counsel having moved for the confirmation of the report made by the commissioners of appraisal in the above matter, the commissioners of the Central Park objected to the confirmation, on the ground that, they having passed a resolution discontinuing the proceedings, they were, *ipso facto*, by the mere passage of such resolution, discontinued.

The question thus presented arises upon the act of April 2, 1859, entitled "An act to alter the map of the city of New York, by laying out a public place, and to authorize the taking of the same." And it is a purely legal one, into the inquiry of which neither the motives of the various parties, nor considerations of advantage or disadvantage, can enter.

In 1807 the Legislature appointed commissioners to lay out streets, roads, and public squares within certain portions of the city of New York, and directed three similar maps to be made of such streets, roads, and public places, and one to be filed in the office of the secretary of state of the State of New York, one in the office of the clerk of the county of the city and county of New York, and one to belong to the mayor, etc., of the city of New York, and prescribed the mode of opening said streets, roads, or public squares, whenever the mayor, aldermen, and commonalty of the city of New York should be desirous, or require to open such streets, roads, or public squares.

Under this act, the commissioners named therein laid out the city, within the prescribed limits, into streets and public squares, and made and filed the maps thereof as required.

This act of 1807 also provided that whenever so many of the proprietors of lands, fronting on any street delineated on said map, as together owned three-fourths of the front of said lands, should, by petition, require or desire the said mayor, etc., to open any such street or any part thereof, the said mayor, etc., should take such measures as before in said act provided for opening the same.

By this act it was made peremptory on the mayor, etc., to take proceedings to open any street, etc., when a specified number of the owners of property fronting on such street required it.

In 1813 the Legislature passed an act on this subject, of the provisions contained in which one only is material to this question, namely, the one which constitutes the mayor, etc., in all cases, the sole judges of the necessity or propriety of opening any street, etc.

This act, therefore, repealed the peremptory command upon the mayor, etc., to take proceedings, which was contained in the act of 1807.

Under the act of 1813, the question arose whether the mayor, etc., after having, by initiating proceedings, decided upon the propriety of opening, at that time, any street, could revoke that decision by discontinuing the proceedings.

The courts at first held that they would allow a discontinuance upon good cause shown therefor.

After the courts had thus held, the Legislature passed the act of April 20, 1839, by the first section of which it was enacted, that if, upon the hearing of the application for the confirmation of the report of the commissioners of estimate and assessment, persons who should appear by said report to be interested, either by assessment for benefit or award for damages to the amount of a majority in amount of the whole assessments and awards, should appear and object to further proceedings upon said report, the court should order the same to be discontinued, and the same should thenceforth be discontinued; and by the seventh section of which it was enacted that the mayor, etc., should be authorized, at any time previous to the confirmation of the report by the court, to discontinue all further proceedings relative to said improvement, without the necessity of an application to said court so to do.

By reference to the acts of 1807 and 1813, it will be seen that the words "said improvement" refer to opening and laying out streets, avenues, and public squares in the city of New York.

Section 14 of the act of 1839 provided that section 7 should not, in any respect, affect any proceedings commenced previous to the passage of the act.

It is evident from these provisions that the Legislature intended to and did place the whole subject of opening streets, avenues, and public squares in the hands of the mayor, etc., empowering them not only to initiate, but to conduct and discontinue the proceedings, just as in the exercise of their discretion they should deem proper, and depriving the court of any power to control the exercise of such discretion of said mayor, etc., in directing a discontinuance.

This discretion was subject to one limitation, however, namely, that if, upon the hearing of the application for the confirmation of the report of the commissioners of estimate and assessment, persons who, by the report, should appear, either by assessment for benefit or award for damages to the amount of a majority in amount of the whole assessment and award, should appear and object to further proceedings on the report, the court should order the same to be discontinued. Apart from this seventh section of the act of 1839, the Supreme Court, in the Matter of Anthony-street (20 *Wend.*, 614), upon a proceeding commenced before 1839, held that the mayor, etc., under the law as it stood prior to 1839, had a right to discontinue at any time before the confirmation of the report, and that courts could not inquire into the expediency of exercising such right, or if they could, they had no legal power to prevent its exercise.

It is therefore clear that if the act of 1859 had stopped at the end of the first section, then, it being an act amendatory of the act of 1807, all the provisions of that act and of all other subsequent acts amendatory of it, would apply to the proceedings for opening the public place in question, and the mayor, etc., would have had an undoubted right to discontinue any proceedings commenced by them, without any application to the court.

It is objected, however, that this power of discontinuance was not, by the act of 1859, vested in the board of Central Park commissioners. I am of opinion the objection is not well taken. The act takes from the mayor, etc., not only the power of initiating the proceedings, but all control over them. The scope and intent of the act is, that all provisions of the acts of 1813, etc., should be applicable and govern the proceedings to be had for the opening of this public place, but that there should be substituted in the place and stead of the mayor, etc., another body as the motor, with the same and all the powers

and duties that the mayor, etc., possessed under any and all previous acts in relation to the opening and laying out of streets, avenues, and public squares. One of such powers was the power of discontinuing without application to the court.

The propriety of forcing on the mayor, etc., a body to act and acquire property for them, which they shall be compelled to pay for, perchance against their will and against their views of the necessity and propriety of the step, is, to say the least of it, very questionable, and strong arguments might be adduced against the constitutionality of an act containing such provisions.

In all previous acts on this subject, the mayor, etc., were made the motors, and the whole subject of opening, etc., was left to their discretion, subject to the single limitation above mentioned.

This was eminently proper, for the mayor, etc., are the representatives of the whole city, and have the wants and interests of the city confided to their care. It is idle to inquire whether the passage of the act of 1859 was obtained surreptitiously, or, if not so obtained, what the motives of the Legislature were in passing it in its present shape.

It has been passed, and the only question is, what power it conferred on the board of commissioners of the Central Park.

It is also wholly unnecessary to decide upon the constitutionality of the act, for whether constitutional or unconstitutional, the same result must follow. If unconstitutional, the report cannot be confirmed. If constitutional, the act gives the board of commissioners of the Central Park absolute power of discontinuing the proceedings at any time before the confirmation of the report, without application to the court.

That board has so discontinued the proceedings by the passage of their resolution on the 26th of December, 1860.

Entertaining these views, I cannot grant any order confirming or rejecting the report of the commissioners of appraisal.

The only order that can be made, except so far as a retaxation of costs is concerned, is one declaring that the proceedings were discontinued by force of the passage of the resolution.

II. Motion for retaxation of costs in the same proceeding.

BARNARD, J.—The motion for a retaxation of the costs herein must be granted. I am unable to find any authority for the county clerk to act as a taxing officer.

The items and particular services which are charged in the bill are not set forth with sufficient certainty.

It clearly cannot be sufficient to charge in gross whatever sum a person may think his services are entitled to, without any power of correcting or reducing on the part of the county clerk.

And yet that seemed to be the position taken when application was made by the objectors to the large amounts contained in the bill.

The objectors offered to show that some of the services were never performed at all, and that others were more than double the amount allowed or authorized by law.

In my judgment, they should be allowed to do so.

For the purpose of having a proper examination into these charges, I have determined to refer the matter to John B. Haskin, to take proof as to the performance of the service, and the reasonableness of the charges, and report the same to this court, together with his opinion thereon.